UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of the
ESTATE OF JULIUS H. GATER,
a protected individual, BY HIS GUARDIAN
JEANNE STARR GATER,                                    No. 09-CV-14186

                              Plaintiff,              Hon. Gerald E. Rosen

vs.

ALLSTATE INSURANCE COMPANY,

                              Defendant.
_____/

OPINION AND ORDER REGARDING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ March 21, 2011 _____

PRESENT:   Honorable Gerald E. Rosen
           United States District Chief Judge

I. INTRODUCTION

        This No Fault insurance breach of contract action is presently before the Court on

Defendant Allstate Insurance Company's Motion for Partial Summary Judgment on

Plaintiff's claim for insurance benefits for attendant care services.  Plaintiff has

responded to Defendant's motion, Defendant has replied, and Plaintiff has sur-replied.

Having reviewed and considered the parties' briefs, supporting evidence, and the entire

record of this matter, the Court finds that the pertinent facts and legal contentions are

1

sufficiently presented in these materials, and that oral argument would not assist in the resolution of this matter.  Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will decide Plaintiff's motion "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II.  <u>PERTINENT FACTS</u>

On October 1, 1983, Julius H. Gater was severely injured in an automobile accident.  He suffered a traumatic brain injury in the accident that resulted in the need for continuous attendant care, guardianship, and case management services.  On February 29, 1984, Dr. Gater's wife, Jeanne Starr Gater, was appointed Guardian of Dr. Gater pursuant to Letters of Guardianship issued by the Oakland County Probate Court.  Mrs. Gater has held that guardianship position and has been Dr. Gater's primary care giver since that time.

At the time of the accident, Dr. Gater was the named insured on an automobile insurance policy issued by Allstate Insurance Company and, as a consequence, Allstate became obligated to pay no-fault benefits pursuant to the terms of that policy and the Michigan No-Fault Act.  As of this date, Allstate has paid more than $4.5 million in such benefits.

In October 2004, Allstate and Mrs. Gater, as guardian of Dr. Gater, executed an Agreement for Payment of Benefits concerning the payment of attendant care and guardianship and case management benefits.  With respect to attendant care benefits, the

2

Agreement provided as follows:

1.    Commencing October 1, 2004, Allstate agrees to the payment of a **daily rate of $476.88 to Anne J. Gater[1] for attendant care benefits, as well as room and board, for the care, recovery and rehabilitation of the claimant, Dr. Julius H. Gater, Jr**.  This payment will provide attendant care for Mr. Gater on a 24 hour basis, same inclusive of commercial agencies, independent contractors, or Mrs. Gater or any other family member.  Such payment discharges any claims for ancillary expense, insurance expenses, overtime, vacation pay, health insurance coverage, etc., etc.  ***The room and board component compensates for Mr. Gater's use of the residence at 18185 Shoreline Court, Northville, Michigan,*** which has been modified to meet the wheelchair accessability required by Mr. Gater.

2.    The daily rate will be adjusted annually on October 1st of each successive year, same reflecting the COLA increase in the statutory maximum under the Michigan No Fault Act.  There will be no other adjustments to the daily rate, as long as Mr. Gater remains a resident in the family home in Northville, Michigan.  However, if Mr. Gater is hospitalized or institutionalized, the payment of the daily rate will abate during the period of time that he is absent from the family residence.[2]

* * *

---

[1]  This agreement refers to Mrs. Gater as "Anne J. Gater" (rather than Jeanne Starr Gater) and Mrs. Gater signed the agreement as "Anne J. Gater."  The Letters of Guardianship issued by the Oakland County Probate Court designate "Jean Gater" as Dr. Gater's guardian.  [*See* Plaintiff's Ex. C.]  All other documents (except the insurance policy which identifies the insureds as "Julius & Anne? Gater") refer to Mrs. Gater as "Jeanne Starr Gater." Although none of the parties has explained these name discrepancies, all parties agree that this is the agreement that governed payment for attendant care benefits for Dr. Gater.

[2]  The omitted Section 3 of the Agreement concerns the payment of a $500 monthly stipend for case management and guardianship services which is not presently at issue.

This Agreement is designed and intended to resolve disputed claims for the specific enumerated services outlined above, and does not constitute an agreement, release or discharge of any other benefit to which Mr. Gater may be entitled as a consequence of injuries sustained in a motor vehicle accident of October 1, 1983.  This Agreement shall remain in effect for 36 months, through October 1, 2007, at which time either party may seek revision of the Agreement based on the circumstances then existing.

[Plaintiff's Ex. A; Defendant's Ex. 3].

There is no dispute that Allstate paid Mrs. Gater for attendant care services for Dr. Gater pursuant to this Agreement.  Accordingly, the daily amount paid to Mrs. Gater was upwardly adjusted annually for three years and as of October 1, 2007, the adjusted per diem amount paid to Mrs. Gater was $509.77.  Although the Agreement formally expired on October 1, 2007, Allstate continued to pay Mrs. Gater $509.77 per day (which calculates to an hourly rate of $21.24 per hour) for attendant care services provided for her husband after the Agreement's expiration.  And, though the 2004 Agreement explicitly provided that after its expiration on October 1, 2007 either party could seek revision of the agreement based upon the circumstances then existing, Mrs. Gater admitted in her deposition that prior to June 16, 2009, she never sought any increase in the attendant care daily rate being paid to her.  [*See* 6/28/10 Deposition of Jeanne Starr Gater, Defendant's Ex. 11, p. 74, 76.]  (She did, however, send one letter to Allstate on October 23, 2007 in which she indicated that she believed that the annual cost of living adjustment provided in the 2004 Agreement should be continued.  *See* Gater 7/20/10

4

Deposition, Defendant's Ex. 12, p. 23.)[3]

Meanwhile, in July 2007, Mrs. Gater decided that she and her husband should move to Atlanta, Georgia, to be closer to their daughter and son-in-law, Jameelah Gater and Eddie Richardson.  Dr. and Mrs. Gater moved into the home of the Richardsons, which is located just outside Atlanta, Georgia.  They resided with the Richardsons for one year.  During that time, Mrs. Gater arranged to build a residence for Dr. Gater and herself to be located in a subdivision in Greensboro, Georgia.  By July 2008, before the construction of the home was completed, Mrs. Gater sensed that she and her husband were intruding on the privacy of her daughter and son-in-law, so she and Dr. Gater moved into an apartment where they remained until March 2009.  In March 2009, upon completion of their home in Greensboro, Georgia, the Gaters moved into that residence.

Prior to the completion of construction of the home, on July 24, 2008, Mrs. Gater, as Guardian and Conservator of Dr. Gater, and Allstate entered into an "Agreement and Release of Claims for Housing Accommodations."  [*See* Defendant's Ex. 5; Plaintiff's Ex. H].  Pursuant to this agreement, Allstate agreed to contribute $54,975.00 for the

---

[3]  As set forth in Section 2 of the 2004 Agreement, the daily rate for attendant care was adjusted annually on October 1 in accordance with the COLA increase in the statutory maximum under the Michigan No Fault Act.  The statutory maximum increased 2.7% in 2007-08 (from $4589 to $4713) and 5% in 2008-09 (from $4713 to $4948), but *decreased* 1.42% in 2009-10 (from $4948 to $4878).  *See* M.C.L. § 500.3107(1)(b).  Thus, had the cost of living adjustments to the attendant care rate continued in accordance with the COLA increase in the statutory maximum set forth in M.C.L. § 500.3107(1)(b), the attendant care daily rate would have been $523.54 in 2007-08; $549.64 in 2008-09; and $541.84 in 2009-10, i.e., a total increase as of October 1, 2010 amounting to $32.07 per day.

construction of barrier-free modifications to the new home, in exchange for which
Plaintiff "agree[d] that Allstate will have no further responsibility for the payment of any
form of housing accommodations, inclusive of modifications, alterations, ***and/or room
and board past, present, or future***."  [Release Agreement, ¶ 2 (emphasis added).]  The
Release Agreement further specified that Michigan law would govern its construction
and enforcement, *id.* ¶ 14, and further specified that

> 16.   None of the parties to this Release Agreement are relying upon any
> oral or written representation with respect to the subject matter of
> this Agreement and this Agreement constitutes the full and final
> agreement among the parties, subject to the terms and limitations
> contained in this agreement.
>
> 17.   Each of the parties have fully reviewed this Release Agreement with
> their attorney who is the attorney of their choice and having had the
> term and consequences thereof explained to them and having a full
> understanding of the terms thereof, do hereby voluntarily affix their
> signatures as evidence of their willingness to accept and be bound by
> all the terms and conditions herein.

*Id.* ¶¶ 16, 17.

The $54,975.00 check written by Allstate was cashed and neither Mrs. Gater nor
her attorney has made any effort to tender back the proceeds.  *See* Affidavit of Allstate
Claims Adjuster Earl McClendon, Defendant's Ex. 4.

As indicated above, Mrs. Gater admitted in her deposition that, other than one
time expressing her belief that the COLA adjustments should be continued, she never
made any demand for an increase in the amount Allstate was paying her for attendant
care services she provided her husband until June 16, 2009.  On that date, Plaintiff's

counsel submitted a claim to Allstate on behalf of the Estate of Julius Gater seeking payment of $690.00 per day for attendant care services. *See* Plaintiff's Ex. D.  This calculates to an hourly rate of $28.75. *Id.*  According to this demand letter, this augmented rate "w[as] derived by investigation with nursing care agencies in the Atlanta area including Health Care Plus, LLC, which recently provided a portion of in-home care for a short time in March, 2009 for Dr. Gater."[4]  Plaintiff's Ex. D; *see also* Affidavit of Orian P. Motley, RN, Clinical Director of Health Care Plus, Plaintiff's Ex. E.[5]

In light of Plaintiff's claim, Allstate itself surveyed the home health care market in the Greensboro, Georgia area as to the cost of the kind of attendant care services that Mrs. Gater provides for her husband.  Allstate contacted Health Care Plus which customarily charges $19.00 per hour (no shift, weekend or holiday differential); Comfort Keepers #473, which charges $18.00 per hour (with double time on holidays); and Rescare Home Care, which charges $18.00 per hour (with time and a half on holidays). *See* Report of Danielle M. Mayer, Defendant's Reply Ex. 3.  These rates are consistent with those reported by Plaintiff's own expert, Julie A. Smith, RN.  According to Ms.

_____

[4]  Health Care Plus provided Dr. Gater with a "companion level staff person" for two days, March 19 and 20, 2009. *See* Affidavit of Orian P. Motley, RN, the Clinical Director of Health Care Plus, Plaintiff's Ex. E, ¶ 5.  The level of care was deemed "non-skilled" and was provided by a Personal Care Assistant at the Agency rate of $19.00 per hour. *See* Report of Danielle M. Mayer, RN, Defendant's Reply Ex. 3.

[5]1  Although Plaintiff seeks to be compensated based upon a $28.75 hourly rate, Ms. Motley states in her Affidavit that Health Care Plus currently charges $19.00 per hour. *See* Motley Affidavit, Plaintiff's Ex. E, ¶ 7.

Smith's report, the cost of non-skilled attendant care services in the Atlanta area ranges

from $18-20 per hour.  *See* Plaintiff's TRO Ex. A.[6]

Based upon its survey of the relevant market, Allstate did not accede to Plaintiff's

demand for a per diem payment of $690 ($28.75 per hour) and this lawsuit ensued.[7]

---

[6]  Ms. Smith's report states that she contacted three home health care agencies in the Atlanta area on September 13, 2010 and she reports that Care Minder of Atlanta charges $18 per hour; Better Care of Atlanta charges $19-20 per hour; and Health Care Plus charges $19 per hour.  [Plaintiff's TRO Ex. A.]

[7]  After Defendant filed its motion for partial summary judgment, based upon its survey of the Atlanta area market, Allstate determined that it was paying Mrs. Gater substantially more than rates charged by other care givers in the area.  Therefore, on October 1, 2010, Allstate informed Plaintiff's counsel that Dr. Gater's attendant care benefit would be reduced to $260 per day. [*See* Plaintiff's Supplemental Ex. B].  Allstate's letter to counsel stated:

Dear Ms. Kinsella, Esq.

Based upon recent events, specifically the analysis of experts retained by Allstate to evaluate the attendant care claim of Mrs. Gater, Allstate has determined that the attendant care benefit should be reduced to $260 per day.  I do enclose a check for the month of September 2010 in the amount of $7,200.  Because Mrs. Gater will certainly wish to have a rationale for this decision, I have chosen to send the check and a letter of explanation to you.

As you are well aware, Allstate entered into a contractual arrangement with Mrs. Gater which expired on October 1, 2007.  Immediately preceding the expiration date, Mr. and Mrs. Gater moved to Atlanta, Georgia.  While we were uncertain as to whether the prevailing rates for care givers in Atlanta, Georgia were equivalent to that in Southeastern Michigan, we decided to continue paying the same daily amount ($509) while we pursued investigation of that issue.  In the interim, the Michigan Court of Appeals issued an opinion in Bonkowski v Allstate, 281 Mich App 154 (2008) which, in part, raised an issue as to whether a family member should be paid at the agency rate or the employee rate.  Allstate chose not to alter

payments to Mrs. Gater because the Bonkowski case was subsequently
appealed to the Michigan Supreme Court.  As you are aware, leave was
denied in 2010.

Our counsel advises that you have been provided with the narrative reports
of our experts in the pending litigation, same being Sharon Filas, CPA and
Danielle M. Mayer, RN.  Those reports reach the same conclusion; namely
that the value of the attendant care, measured by the employee rate, is no
greater than $260 per day.  Allstate has decided to adopt the highest
possible rate of compensation for Mrs. Gater and, on a going forward basis,
we will pay her $260 per day for the attendant care provided to her
husband.  Allstate will continue to pay $500 per month for guardianship
services.

While there has been a substantial overpayment in the past three years,
Allstate will not seek reimbursement from Mrs. Gater or the Estate of Mr.
Gater.  If you have any documentation that contradicts the conclusions of
either of these experts, we will be willing to review same and respond
accordingly.

[Plaintiff's Ex. B.]

Following receipt of Allstate's October 1, 2010 correspondence, Mrs. Gater, on
behalf of the Plaintiff estate, entered into a contract with Health Care Plus, LLC, to
provide staffing for 24-hour attendant care services for Mr. Gater.  [*See* TRO Motion Ex.
C.]  In her personal capacity, Mrs. Gater then contracted with Health Care Plus to become
a care provider on staff with Health Care Plus and to personally provide those services to
Mr. Gater as she had been doing for the past 27 years.  [*See* Deposition of Orian Motley,
TRO Motion Ex. D, pp. 26-27].

Beginning on October 23, 2010, Health Care Plus began billing Allstate at a rate
of $748 per day (or $31 per hour) for the care provided by Mrs. Gater and one additional
employee.  (This additional employee provides attendant care services 8 hours per day/5
days per week in order to relieve Mrs. Gater.  *See* TRO Motion Ex. E.)  [TRO Motion
Exhibits F, G, and H.]  Although Health Care Plus billed at $31 per hour, Orian Motley
testified that Mrs. Gater was paid only $24 per hour by Health Care Plus, and the relief
employee was paid $25 per hour.  [*See* Deposition of Orian Motley, Plaintiff's TRO Ex.
D, pp. 30-31.]  Since October 2010, Allstate has paid Health Care Plus at a rate of $19
per hour.  *See* Affidavit of Earl McClendon, Defendant's Response to TRO Motion, Ex.

9

Through a Complaint, which was filed in Oakland County Circuit Court that was subsequently removed to this Court on diversity of citizenship grounds, Plaintiff seeks both monetary and declaratory relief premised on the allegation that Allstate has issued payment for attendant care and guardianship services at rates below that which are reasonable for the services provided.  Allstate seeks summary judgment only on the attendant care claim.

### III.  ANALYSIS

### A.   STANDARDS GOVERNING DEFENDANT'S MOTION

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

---

3.  Because Allstate refused to pay the full amount billed by Health Care Plus, on December 3, 2010, Plaintiff filed a Motion for Temporary Restraining Order.

Though Plaintiff filed a Supplemental Response Brief to bring the post-October 1, 2010 developments to the Court's attention, no motion for summary judgment addressing the October 1, 2010 reduction has been filed.  Therefore, the Court will confine its summary judgment decision to the arguments raised  Defendant in the motion for summary has been filed judgment presently before the Court.  These arguments concern Plaintiff's claims as they existed as of the date of the filing of Defendant's motion for summary judgment. i.e., when Allstate was paying Plaintiff $509.77 per day.

burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

In the present motion, Defendant Allstate seeks a summary judgment ruling that it has paid a reasonable amount for the attendant care provided by Mrs. Gater for her husband. In addition to arguing the reasonableness of its payments, in its Motion for Partial Summary Judgment as originally filed, Defendant made two additional arguments: (1) that, pursuant to the "one-year-back rule" set forth in M.C.L. § 500.3145(1),[8]

---

[8] M.C.L. § 500.3145(1) provides, in relevant part:

An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later

11

Plaintiff cannot claim any benefits for incurred expenses prior to September 17, 2008 (one year prior to the filing of suit) and (2) that the terms of the July 2008 Agreement and Release of Claims for Housing Accommodations are enforceable.   However, Defendant has withdrawn the first of this arguments, in light of the Michigan Supreme Court's decision in *Regents of the University of Michigan v. Titan Ins. Co.*, 487 Mich. 289, 791 N.W.2d 897 (2010), in which the court held that the minority/insanity provisions in M.C.L. § 600.5851(1) tolls the one-year-back rule of M.C.L. § 500.3145(1).  Since Dr. Gater has been mentally incompetent since the date of the accident, Allstate now concedes that Dr. Gater's claims are not subject to the "one-year-back" limitation.  *See* Defendant's Reply Brief, p. 2.

With respect to the second of these arguments, Plaintiff affirmatively states in its Response Brief that no claim is being raised as to the enforceability of the 2008 Agreement and Release of Claims for Housing Accommodations.  *See* Plaintiff's

_____

than one year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within one year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury.  If the notice has been given or a payment has been made, the action may be commenced at any time within one year after the most recent allowable expense, work loss or survivor's loss has been incurred.  *However, the claimant may not recover benefits for any portion of the loss incurred more than one year before the date on which the action was commenced. . . .*

M.C.L. § 500.3145(1) (emphasis added).

12

Response Brief, pp. 16-17.[9]  Therefore, it is unnecessary for the Court to entertain

Defendant's request for a ruling on the Agreement's enforceability.  Indeed, under these

circumstances, any such ruling by the Court would be an impermissible advisory opinion.

*See North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404 (1971).  ("The

Constitution's case or controversy requirement precludes courts from rendering advisory

opinions and confines the jurisdiction of the courts to 'real and substantial controvers[ies]

admitting of specific relief through a decree of a conclusive character.'" *Id*.)  Therefore,

the Court's Opinion is confined to the issue of the reasonableness of Allstate's payment

for the attendant care services provided by Jeanne Gater to her husband.


B.    THE AMOUNT PAID BY ALLSTATE FOR ATTENDANT CARE SERVICES
      WAS REASONABLE_____

        Under the Michigan No-Fault Act, attendant care services are compensable

---

[9]  Defendant presumably had interpreted Mrs. Gater's response to one question
posed to her in her deposition as raising a claim as to the enforceability of the 2008
Agreement:

> Q:    Are you legally bound by this agreement that you signed, Mrs.
>       Gater?
>
> A:    I don't know.  Maybe the judge will have to tell me whether I am or
>       not.
>
> Q:    Who will?
>
> A:    The judge.  You said you're going to take it before the judge.

Gater 7/20/10 Dep., p. 39.

pursuant to M.C.L. § 500.3107(1)(a):

> 1.   Except as provided in subsection (2) [not applicable here], personal
>      protection insurance benefits are payable for the following:
>
>      (a)   Allowable expenses consisting of all reasonable
>            charges incurred for reasonably necessary products,
>            services and accommodations for an injured person's
>            care, recovery or rehabilitation.  Allowable expenses
>            within personal protection insurance coverage shall not
>            include charges for a hospital room in excess of a
>            reasonable and customary charge for semiprivate
>            accommodations except if the injured person requires
>            special or intensive care, or for funeral and burial
>            expense in the amount set forth in the policy which
>            shall not be less than $1,750.00 or more than
>            $5,000.00.

M.C.L. § 500.3107(a).

Michigan courts have unequivocally held that this section allows compensation for

services performed by family members in caring for a catastrophically injured person,

such as Dr. Gater.  *See, Manley v. DAIIE*, 425 Mich. 140, 222, 388 N.W.2d 216 (1986)

(legal duty of parents to support their children has no effect on whether services

performed by a parent for a child are an allowable expense under Michigan No-Fault

laws); *Bonkowski, v Allstate Ins. Co.*, 281 Mich. App. 154, 761 N.W.2d 784 (2008), *lv.*

*denied*, 485 Mich. 1040 (compensation allowed for care provided by insured's father);

*Van Marter v. American Fidelity*, 114 Mich. App. 171, 179-80, 318 N.W.2d 679 (1982)

(step-mother's home care of incompetent step-son compensable under Michigan

No-Fault laws); *Visconti v. DAIIE*, 90 Mich. App. 477, 282 N.W.2d 360 (1979)

(compensation allowed for care provided by insured's spouse). In determining reasonable compensation for an unlicensed person who provides health care services, the Court may consider the compensation paid to licensed health care professionals who provide similar services. *Van Marter v. American Fidelity, supra*, 114 Mich. App. at 180-181. For this reason, consideration of the compensation paid by health care agencies to their licensed health care employees for rendering services similar to the services provided by unlicensed family members is appropriate when determining reasonable compensation for those family members. *Bonkowski v. Allstate Ins. Co.*, *supra*, 281 Mich. App. at 165. The *Bonkowski* court, however, made clear that "the actual charges assessed by health care agencies in the business of providing such services is not relevant and provides no assistance in determining reasonable compensation for the actual provider of such services. The focus should be on the compensation provided to the person providing the services, not the charge assessed by an agency that hires health care professionals to provide such services." *Id.*

Turning to this case, the question before the Court is the reasonableness of Allstate's payment of $509.77 per day (or $21.24 per hour) to Mrs. Gater for the attendant care services she provided her husband prior to October 1, 2010. Plaintiff argues that this amount is unreasonable. She claims that she should be paid $690 per day (i.e., $28.75 per hour). Plaintiff, however, has presented no evidence supporting the reasonableness of this augmented sum or the unreasonableness of the amount paid by

15

Allstate.

According to the report of Plaintiff's own expert, Julie A. Smith, R.N., the cost of non-skilled attendant care services in the Atlanta area ranges from $18-20 per hour.  *See* Plaintiff's TRO Ex. A.   Ms. Smith's report states that she contacted three home health care agencies in the Atlanta area on September 13, 2010 and she reports that Care Minder of Atlanta charges $18 per hour; Better Care of Atlanta charges $19-20 per hour; and Health Care Plus charges $19 per hour.  *See id.*  Plaintiff's other expert, Orian P. Motley, R.N., the Clinical Director of Health Care Plus, also stated that Health Care Plus currently charges $19.00 per hour for such services, and that amount is the amount that Health Care Plus charges every patient for the same health care services.  *See* Motley Affidavit, ¶ 7, 11.  Mrs. Gater herself testified in her deposition that she paid Health Care Plus $19 per hour for the services of a personal care assistant ["PCA"] provided by that agency in March 2009 when she had to go out of town for two days.  *See* Gater 6/28/10 Dep., Plaintiff's Ex. 11, p. 44.  Of this $19-per-hour fee charged by Health Care Plus, the agency paid the PCA $9.00 per hour.  *See* 10/28/10 Deposition of Orian P. Motley, Plaintiff's TRO Ex. D, p. 15.  Ms. Motley further testified that the most she pays any of the PCAs employed by Health Care Plus is $9.50 per hour.  *Id.* at p. 35.[10]

---

[10]  In addition to the 35-40 PCAs employed by Health Care Plus, the company also employs approximately 30 Certified Nursing Assistants ["CNAs"].  CNAs can administer medications; PCAs cannot.  Ms. Motley testified, however, that Health Care Plus does not distinguish between the two with respect to what it charges for CNA services; clients are typically charged the same $19 per hour for the services of either care giver.  Motley Dep., p. 43.  The CNAs, in turn, are paid $9.00-$11.00 per hour.  *Id.*

16

While Plaintiff opposes Defendant's motion arguing that the reasonableness of what Allstate has paid for attendant care services is a question of fact to be resolved by the jury, as the Supreme Court has noted, at the summary judgment stage, once the Court has determined "the relevant set of facts and ha[s] drawn all inferences in favor of the nonmoving party to the extent supportable by the record, . . . the reasonableness of [the defendant's] actions. . . is a pure question of law." *Scott v. Harris*, 550 U.S. 372 n. 8, 381, 127 S.Ct. 1769, 1776 n. 8 (2007).  *See also Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 55, 457 N.W.2d 637, 648 (1990) ("While the question whether expenses are reasonable and reasonably necessary is generally one of fact for the jury, . . . it may in some cases be possible for the court to decide the question of the reasonableness or necessity of particular expenses as a matter of law.")  A genuine issue for trial is only presented when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 252, 106 S.Ct. 2505 (1986).

Based upon the record evidence in this case, the Court finds that no reasonable juror could find in favor of Plaintiff in this case.  It is undisputed that from October 1, 2007 through October 1, 2010, Allstate paid Mrs. Gater at a rate of  $509.77 per day which calculates to $21.24 per hour.  Plaintiff's own evidence shows that home health care agencies in the Atlanta area pay their employee/care givers $9.00-$11.00 per hour for the same services Mrs. Gater provided for her husband -- far less than what Allstate

paid Mrs. Gater.  Even comparing the amount paid to Mrs. Gater to the rates which the

Atlanta-area agencies surveyed by Plaintiff's expert charge their clients (rather than the

amount paid by the agency to the person providing the care, as instructed by the

Michigan Court of Appeals in *Bonkowski*, *supra*), Plaintiff still cannot demonstrate that

Mrs. Gater was unreasonably paid.  Those agencies charge $18-$20 -- still less than what

Allstate paid Mrs. Gater.[11]  In sum, the Court concludes that Plaintiff cannot establish that

the amount paid by Allstate prior to October 1, 2010 for attendant care services was

unreasonable.

<u>CONCLUSION</u>

For all of the foregoing,

IT IS HEREBY ORDERED that, with respect to Plaintiff's claim payment for

attendant care services prior to October 1, 2010, Defendant's Motion for Partial

Summary Judgment **[Dkt. # 22]** is GRANTED.

With respect to Plaintiff's December 3, 2010 Motion for Temporary Restraining

Order concerning the October 1, 2010 reduction of payments for attendant care to $260

per day (i.e., $10.83 per hour), the Court finds that Plaintiff has not demonstrated a strong

likelihood of success on the merits.  Nor has Plaintiff demonstrated irreparable harm.  A

---

[11]  The Court notes that had Allstate terminated the $32.25 "room and board" component of Plaintiff's attendant care stipend -- as it could have pursuant to the terms of the 2004 Agreement when the Gaters moved out of their Northville, Michigan home in July 2007 -- Plaintiff's attendant care stipend would have been $477.52 per day, which calculates to $18.50 per hour.

plaintiff's harm is not irreparable if it is fully compensable by money damages.

*Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  Therefore,

   IT IS FURTHER ORDERED that Plaintiff's Motion for Temporary Restraining

Order **[Dkt. # 53]** is DENIED.


   s/Gerald E. Rosen                          
   Chief Judge, United States District Court

Dated:  March 21, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 21, 2011, by electronic and/or ordinary mail.

   s/Ruth A. Gunther                    
   Case Manager